IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KWASHIE SENAM ZILEVU,<br><br>Defendant. | Criminal No. 1:19-CR-356 |

**DEFENDANT'S SENTENCING MEMORANDUM**

Kwashie Senam Zilevu (also the "Defendant" herein), through counsel, submits this sentencing memorandum pursuant to Title 18 U.S.C. § 3553(a) and Section 6A of the United States Sentencing Guidelines (the "Guidelines"). The defendant has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case. For the reasons set forth herein, and such other reasons as may be presented at the sentencing hearing, Mr. Zilevu submits that a term of home detention and probation is sufficient to accomplish the purposes of sentencing in this case.[1]

The government's opening remarks in its position statement at p. 1, stating "[a] sentence of 27 months … appropriately captures the seriousness of [Zilevu's] decision to repeatedly use a credit card obtained using the identity of Matthew Brown …," is

---

[1] As noted in the PSR, p. 5, ¶6, on July 21, 2021, the Court modified the defendant's conditions of release to include the following additional conditions: 1) Defendant is released to the third-party custody of his mother, Eva Zilevu, who agrees to supervise Defendant, use every effort to assure Defendant's appearance at all court proceedings and notify the court immediately if Defendant violates a condition of release or is no longer in the custodian's custody; and 2) Defendant is placed on electronic monitored home detention. *Zilevu has complied with the Court's terms without incident for just short of five (5) months.*

misleading and indicative of its representations throughout the statement. As will be repeatedly stated throughout this Memorandum, the jury found Zilevu *not guilty* of five of the six counts, one of which was obtaining the Amex credit card "using the identity of Matthew Brown." Similarly, while the Court may consider the circumstances surrounding the crime for which Zilevu was found guilty, the government refuses to acknowledge that Zilevu was expressly found *not guilty* of using either the Singleton or Fudger credit cards. Thus, he should not be held accountable for the "undisputed loss" related to those respective cards, as suggested by the government (Doc 113, Govt Position Statement – "GPS" - at fn 1, discussing the inclusion of losses attributable to acquitted conduct).

## I. Relevant Procedural History

The government's recitation of the procedural history is accurate.

## II. Factual Background

Evidence submitted at trial, as outlined in the PSR, failed to prove that Zilevu was a sophisticated criminal making use of the dark web to purchase the victims' personal information, and used that information to apply for credit cards in the victims' names. The testimony of Matthew Brown established that the use of the card was unauthorized and the representative from American Express established the amount charged on the Brown Amex card. However, the jury clearly did not accept the self-serving testimony of the government's cooperating witness Blay ("Blay"). Nor did it accept the testimony of Special Agent Flanna Soden ("SA Soden")(SA Soden provided testimony that Zilevu confessed to all six counts in the indictment).

Contrary to the assertions of the government (GPS p. 3), the evidence that Zilevu purchased flights for himself and others to travel both internationally and domestically was *not* accepted by the jury – thus the not guilty verdicts on the counts involving the cards n which those charges were made. While the government has pictures of Zilevu in retail stores, that behavior was not denied

via argument at trial. More importantly, the "inculpatory financial documentation" and other evidence resulted in the jury finding Zilevu not guilty on five of the six charges.

Given the not guilty verdicts on five of the six counts, it is clear the jury accepted Zilevu's argument, by counsel, that he did *not* use Belview Auto or his own address "to obtain the Amex card in Brown's name" (GPS p. 3). It is more likely the jury attributes that criminal behavior to the government's cooperating witness, Blay, and merely felt that Zilevu should have known better than to receive the Brown Amex card from Blay for repayment of debts (it is also worth noting that the "admissions" and the $10,000.00 figure upon which the government relies in bashing Zilevu's "defense" came from SA Soden, whose testimony rejected in large part by the jury; see GPS p. 4, middle ¶).[2] Consistent with the entire GPS, the government refers to the testimony of SA Soden as clear and concise evidence of Zilevu's criminal activities and the loss suffered by the victims (plural)(Id.).  Yet, there was only one victim, making even more clear the fact the jury in large part rejected SA Soden's testimony.

The government's reliance upon cooperating witness Blay's testimony (GPS p. 4, first ¶), is, again, belied by the not guilty verdicts on five of the six counts.

### III.  Guideline Calculation

The base offense level of 6 is accurate.

   A. *The PSR accurately applies a 6-level increase for a loss of more than $40,000.00, and no greater than $95,000.00, pursuant to U.S.S.H §2B1.1(b)(1)(D)*

   B. *A 2-level increase should not be applied for Defendant's unauthorized transfer or use of a means of identification unlawfully to produce or obtain any other means of identification, pursuant to USSG §2B1.1(b)(11)(C)(i).*

Zilevu received a +2 enhancement in the presentence report given, per the report, the

---

[2] Further, Blay also testified that Zilevu co-signed for a BMW, Blay had problems with the payments, and that [approximately five year old] BMW 750 certainly cost more than $10,000.00.

offense "involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification" (Doc 111, p. 14, ¶68).  While true, the crime "involved" said behavior, Zilevu was expressly found not guilty of identity theft with respect to all three victims. To be clear, with respect to all three (3) credit cards, Zilevu was found not guilty of "knowingly transferring, possessing or using a means of identification of another person." (Jury Instruction PP, Essential Elements of the Offense Charged – Counts Four Through Six (Aggravated Identity Theft)).

The government relies heavily on the Venmo and Paypal accounts to justify this enhancement (GPS p. 5-8). Respectfully, it is not as clear as the government suggests that the jury was persuaded by SA Soden or any documentary evidence that *Zilevu* created those accounts, and not Blay or some other member of Blay's extensive criminal network.

Accordingly, this enhancement should not be applied or considered.

    C. *A 2-level increase for Defendant's use of a sophisticated means, pursuant to USSG §2B1.1(b)(10)(C), should not be applied*.

Zilevu objects to the 11th hour amendment to include the additional +2 enhancement asserted the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. Again, Zilevu was expressly found *not guilty* of Counts 4-6, the identity theft charges with respect to all three victims – Brown, Singleton and Fudger. Zilevu was also found not guilty on fraudulently accessing the credit cards of Fudger and Singleton. He was found guilty solely on the one charge of using the Brown Amex card (Count I – Access Device Fraud). Respectfully, this places the government in quite the predicament, as it will argue that Zilevu "engaged in or caused the conduct constituting the sophisticated means" when he was found not guilty of the charges

against him that expressly accused him of said conduct.

Further, there is nothing to suggest that receiving a card from a 3rd party who purports to authorize you to use said card, is sophisticated. While the jury clearly felt that Zilevu should have known better, there is little evidence to support the government's reference to the charity website (in fact, the Court denied the prosecution the right to reference this charity during the trial). Similarly, there is no evidence to suggest that the jury found that *Zilevu*, from inception, used the entity Belview Auto alongside his address, to obtain the credit cards in Brown's name. Again, the jury expressly found that Zilevu was *not guilty* of using Brown's personal information to apply for and obtain the Amex card in Brown's name – Zilevu was only found guilty of *using* the card.

Accordingly, this enhancement should not be applied or considered.

### IV. Section 3553(a) Factors

Mr. Zilevu submits that a consideration of the sentencing factors set forth in § 3553(a) supports a sentence of home detention and probation. A district court determines the applicable sentencing rangepursuant to the United States Sentencing Commission Guidelines ("Guidelines"). Gall v. United States, 552 U.S. 38, 39 (2007). In United States v. Booker, the Supreme Court determined thatthe Guidelines are advisory. 543 U.S. 220, 245-46 (2005). Although no longer mandatory, the Guidelines' sentencing ranges continue to function as "the starting point and the initial benchmark" for all sentencing proceedings. See Gall, 552 U.S. at 46, 49 (noting that the Guidelines are presumed to be "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Even if advisory only, the Guidelines must be given "respectful consideration" by the sentencing court. See Kimbrough v. United States, 552 U.S. 85, 101 (2007).

year                                           5

After consulting the Guidelines, a sentencing court performs an "individualized assessment" of the situation. Gall, 552 U.S. at 50. This analysis is guided by "[r]easonableness"and an "individualized application of the statutory sentencing factors" listed in section 3553(a) Gall, 552 U.S. at 46-47); Kimbrough, 552 U.S. at 113 ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) theadvice of the Guidelines.").

Section 3553 states that the Court should consider the nature and circumstances of the offense and the characteristics of the defendant. In addition, it states that the Court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

A sentence should protect the public from further crimes from the defendant, and provide the defendant with the needed medical or correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). The Court shall also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

Upon consideration of those factors, this Court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails to properly reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." Rita v United States, 551 U.S. 338, 351 (2007).

> A. *A sentence of home detention is appropriate given the Nature and Circumstances of the Offense*

Regarding the nature of the offense, there is no doubt that Mr. Zilevu's activities

constitute unfortunate criminal conduct. The government must concede that it is rare to see a fraud case in federal court where restitution is less than $50,000.00. The nature of the offense is Mr. Zilevu used a credit card he was not authorized to use. Nothing more. The jury clearly rejected the government's evidence that Zilevu was engaged in the sophisticated criminal activity attributed to him by their cooperating witness, Blay. Nor did they accept the testimony of SA Soden concerning his purported admissions.

> B. *A sentence of home detention is appropriate given the Defendant's personal history and characteristics*

Zilevu has no prior criminal history. He served the federal government for more than ten years as an IRS employee. This Court heard of his background at trial, via his sister's testimony, and now in the PSR. He has a close, caring family, and has led an exemplary life – with the exception of this one blemish resulting from the finding of guilt on one count of access device fraud.

The government refers to Zilevu's "attempts to deflect blame unto others" which evidences his failure to "fully grasp the extent of his criminal conduct" (GPS p. 12). The government fails to acknowledge that the jury, in large part, *accepted* Zilevu's *attempts* to point the finger at the real criminal – the government's cooperating witness, Kwau Blay. Those are not mere *attempts* – he was successful, in large part. From the evidence and the circumstances, it appears they did *not* accept the proposition, made by Zilevu's counsel during argument, that Zilevu accepted the Brown Amex from Blay to pay off a debt owed to him without realizing it amounted to an unauthorized use of said card. He should have known better, as a reasonable person would have – per the jury. Given Blay's criminal history, the extent of his criminal network (about a dozen others) and the variety of his crimes, it is,

respectfully, naïve for the government to refer to Blay's testimony as "compelling" (GPS p. 11).

>   C. *A sentence of home detention is sufficient to promote respect for the law and afford adequate specific deterrence.*

>   1. The Kinds of Sentences Available

There is no mandatory minimum sentence. The sentencing options available to the Court include home detention (with / without electronic monitoring); custody followed by supervised release; probation; restitution; forfeiture; and fines. In this case, Zilevu asks the Court to sentence him to a period of home detention (with electronic monitoring if the Court deems it necessary / appropriate), followed by a period of probation. As noted above, Zilevu has been on home detention with monitoring for almost five (5) months since the verdict – all without incident.

>   2. The Advisory Sentencing Guidelines Range &
>      Policy Statements of the Sentencing Commission

District courts must give due consideration to relevant policy statements, but those policy statements are no more binding than any other part of the Guidelines. Thus, a sentencing court may vary from the Guidelines based solely on policy considerations, including disagreements with the Guidelines. United States v. Morace, 594 F.3d 340, 349 (4th Cir. 2010), quoting Kimbrough at 101.

>   3. The Need to Reflect the Seriousness of the Offense,
>      Promote Respect for the Law, Provide Just
>      Punishment

Mr. Zilevu has never before been arrested and has otherwise been an exemplary citizen. The seriousness is, as seen in the PSR and +6 increase, reflected in the amount of

year                                      8

the restitution – less than $50,000.00. The undersigned respectfully submits this Court will rarely, if ever, see fraud cases where the loss is less than $50,000.00, revealing that relative to other fraud cases, Zilevu is at the low end of the spectrum of those committing fraud. This is evidenced and supported by the report prepared for purposes of sentencing by MCM Data Consultants (Ex A hereto - "Report").

Title 18 U.S.C. §3553(a)(6) directs that the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" be considered when imposing sentence. To this end, MCM Data Consulting ("MDC") has prepared the attached report of data analysis to determine comparative sentences imposed on defendants most similar to Mr. Zilevu.

Report Page 5

The report's findings reveal that of the 1,695 defendants with a loss level increase of 6 (regardless of any additional increases), 55.9% of them received probation (Report Table A, at p. 4). Of the 44.1% sentenced to a term of imprisonment, the average sentence was 3.6 months and the median sentence imposed was probation.

Of the 1,695 defendants sentenced nationally who received a 6-level increase for loss, 156 were sentenced in the Fourth Circuit. Of those 156, 75 (48.1%) received probation and 81 (51.9%) were sentenced to a term if imprisonment, with an average sentence of 4.1 months and the median sentence imposed was 1 day of imprisonment.

Of the 156 defendants sentenced in the Fourth Circuit who received a 6-level increase for loss, 35 defendants were sentenced in the Eastern District of Virginia. Of these 35 defendants, 13 defendants (37.1%) received a probationary sentence and 22 defendants

year 9

(62.9%) were sentenced to a term of imprisonment. The average sentence imposed on these 35 defendants was 4.7 months and the median sentence imposed was 1.0 month of imprisonment.

Of the 1,695 defendants sentenced nationally who received a 6-level increase for loss, 5 defendants violated 18 USC §1095(a)(5) and no other statute. Of these 5 defendants, 2 defendants (40.0%) received a probationary sentence and 3 defendants (60.0%) were sentenced to a term of imprisonment. The average sentence imposed on these 5 defendants was 4.4 months and the median sentence imposed was 1.0 month of imprisonment.

Of the 5 defendants sentenced nationally who received a 6-level increase for loss and violated 18 USC §1095(a)(5) and no other statute, 1 defendant was sentenced in the Fourth Circuit (Eastern District of Virginia). This defendant was sentenced to 1.0 month of imprisonment.

Of the 1,695 defendants sentenced nationally who received a 6-level increase for loss, one (1) defendant was scored precisely the same as the scoring contained in Mr. Zilevu's PSR (*prior to the recent amendment*). This defendant was convicted after trial and sentenced in the Southern District of Ohio to a period of probation with 8 months of home detention. See the Report at p. 6 – Table B.

Report Page 6

Of the 1,695 defendants sentenced nationally who received a 6-level increase for loss, one (1) defendant was scored precisely the same as the scoring contained in Mr. Zilevu's PSR. This defendant was convicted after trial and sentenced in the Southern District of Ohio to a period of probation with 8 months of home detention.

The data makes clear that Zilevu is without question on the low end of the spectrum when it comes to the amount of the loss and enhancements (two +2 enhancements in the PSR). The entire data pool of 1695 defendants with a +6 level increase for loss does not account for any enhancements or reductions. Nonetheless, it provides persuasive support for a term of home detention given the nature and circumstances of the underlying crime for which Zilevu was found guilty (including the fact the amount of loss is at the low end of the spectrum).

### IV. Restitution and Forfeiture

Zilevu has executed consent orders for restitution, forfeiture, and a restraining order which precludes him from encumbering his property any further, in exchange for which the government will not place any criminal judgment liens among the land records.

Further, the government has agreed not to oppose Zilevu's request for interest on the restitution figure to be waived (see Consent Restitution Order, ¶5).

### V. CONCLUSION

After a consideration of the § 3553(a) factors, Mr. Zilevu respectfully submits that a period of home detention is sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

Exhibits

Ex A - MCM Data Consulting Report

Respectfully submitted,

KWASHIE ZILEVU

By Counsel,

The Brown Firm PLLC


_/s/ Christopher E. Brown___
Christopher E. Brown
VSB#39852
526 King St., Suite 213
Alexandria, VA 22314
703.924.0223
fax 703.924.1586
cbrown@brownfirmpllc.com
*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was filed by CM/ECF on this 24th day of November, 2021, which will send a notification of such filing (NEF) to the following:

Ron Fiorillo, Assistant United States Attorney
Jamar Walker, Assistant United States Attorney
Kevin Hudson, Assistant United States Attorney


/s/ *Christopher E. Brown*

Christopher E. Brown